**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| FLUOR INTERCONTINENTAL, INC., )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>IAP WORLDWIDE SERVICES, INC., )<br>READINESS MANAGEMENT )<br>SUPPORT, L.C., )<br>)<br>Defendants & )<br>Third Party Plaintiffs, )<br>)<br>v. )<br>)<br>JOHNSON CONTROLS, INC., )<br>)<br>Third Party Defendant. )<br>) | Case No. 5:09-cv-00331-RS-EMT |

**FLUOR INTERCONTINENTAL, INC.'S RESPONSE IN OPPOSITION TO
DEFENDANTS' EMERGENCY MOTION TO COMPEL PRODUCTION OF
DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED**

Fluor Intercontinental, Inc. ("Fluor"), by and through its undersigned counsel, respectfully requests this Court to enter an Order Denying IAP Worldwide Services, Inc. and Readiness Management Support, L.C.'s (collectively, "Defendants") Emergency Motion to Compel Production of Documents Improperly Withheld as Privileged. In support thereof, Fluor states the following:

Because RMS has not been able to find documents to support its defenses, it is instead engaging in scorched-earth litigation tactics by filing "emergency" motions in the final days before discovery closes. In this latest round, RMS is attempting to obscure the real issues of the case by alleging that Fluor has made improper claims of privilege and is refusing to turn over

documents. To the contrary, Fluor has been more than willing to provide documents and other discovery that RMS has requested (even when not legally required to do so) all in a showing of cooperation and good faith. But RMS has not returned the favor. Initially, RMS challenged a total of 491 separate documents on Fluor's privilege log, and some documents challenged on multiple grounds. Thereafter, Fluor, in an effort to resolve this issue, provided more detailed descriptions of the withheld documents on its privilege log and provided RMS the opportunity to narrow its challenges. But RMS failed to consider the updated descriptions and is again challenging the same number of documents, and now seeks to pass the burden of reviewing these 491 documents to the Court. The time and expense of providing more information to RMS was to no avail. Moreover, as Fluor informed RMS during a meet and confer teleconference, the majority of the documents that RMS has challenged are either unrelated to this case or are unresponsive to any of RMS's document requests.

In challenging Fluor's privilege claims, RMS cites general legal propositions and then makes conclusory statements that Fluor's documents are not privileged without explaining why it believes any particular document is not privileged. RMS cannot seriously argue that Fluor's documents are not privileged, because **RMS claims privilege for exactly the same types of documents**.[1] For example, it complains about Fluor's documents that have no attorney on the communication (despite the identity of the attorney listed in the description), yet its log contains at least 179 entries that do not have an attorney identified on the communication. Also, RMS challenges documents where an attorney is not the recipient or the sender of a communication, but is copied on the communication; yet RMS has at least 49 documents on its log where an attorney is solely copied on the communication. It also complains of documents from Fluor legal

---

[1] Copies of RMS's privilege log and its supplemental privilege logs are attached as Ex. 1.

personnel, but RMS has similarly withheld a number of documents on its privilege log that include only a paralegal (not an attorney) on the communication.[2]  Furthermore, the adequacy of RMS's privilege log descriptions fall well short of the detailed content Fluor provided to RMS, yet it complains that the same types of documents are not privileged.  RMS cannot have it both ways—Fluor believes its documents are privileged, but if the Court determines otherwise, then RMS too must produce documents for which it has claimed privilege under the same standard.[3]

RMS also challenges two other categories of documents withheld by Fluor where it deems Fluor has waived privilege, but RMS cites no authority for such a broad waiver and has not identified any communications or documents on Fluor's log that fall within the confines of those waived categories.

RMS's motion should be summarily denied for the reasons stated above.  Fluor stands behind its privilege logs and does not believe that an *in camera* review of individual documents by the Court is necessary.  RMS has not sufficiently narrowed the documents it challenges in light of the detailed descriptions provided in Fluor's Supplemental Privilege Log of May 25, 2010, and most of the documents challenged by RMS are either unrelated to this litigation or are not responsive to any of RMS's document requests.

---

[2] RMS has even claimed privilege for documents that were transmitted to Fluor employees, Donald McDonald, William Holstein, and April Kinney.  Fluor has informed RMS of the existence of these documents and has requested that RMS produce these documents immediately.  Other unusual claims of privilege made by RMS include documents that have "Mail server," "Visnetic mailserver," and "Hami4850" in the AUTHOR field but no other attorney on the communication.  Also, RMS included many documents on its supplemental privilege log with blank fields in the AUTHOR and RECIPIENT fields and without any other identifying or descriptive information as to who provided or requested legal advice.

[3] Fluor reserves its right to file a separate motion to compel documents improperly withheld as privileged from RMS's privilege log and will request an *in camera* review of documents challenged on RMS's privilege log if RMS continues to challenge the sufficiency of Fluor's privilege log.

## Background

This dispute arises out of work that Fluor performed on behalf of RMS, pursuant to a prime contract between the U.S. Air Force and RMS to construct housing and dining related facilities, known as an "Expeditionary Village," at Al Udeid AB, Qatar.  In order to perform the work under its subcontract, with RMS's involvement and approval, Fluor hired a subcontractor, International Building Systems ("IBS"), to construct and install the billet units and latrines. Several months after construction began, Fluor was forced to terminate IBS for default for its deficient performance under the subcontract, which resulted in litigation between Fluor and IBS (the "IBS litigation").

After hiring a replacement subcontractor, RMS told Fluor that it would not bill the Air Force or pay Fluor its costs to remedy IBS's deficient work until Fluor had exhausted its attempts to recover its costs from IBS (the "IBS rework").  Fluor tracked the amount of money that it expended to remedy the IBS rework in a separate account.  Every week, Fluor notified RMS of the costs it had incurred and expected to incur in performing work related to the rework effort.  RMS in turn assured Fluor that it was keeping the Air Force informed of Fluor's costs (a requirement for cost recovery under a cost reimbursement contract).  Shortly before the project was complete, the Air Force terminated RMS, who subsequently terminated Fluor from its contract.  The Air Force terminated RMS because RMS had not in fact been giving regular notice to the Air Force of Fluor's costs incurred, as promised.  By the time RMS—at Fluor's urging—finally informed the Air Force of Fluor's expenses, Fluor had overrun the contract amount by over $20 million.  While Fluor was able to obtain recovery of some of the money from the Air Force, it did not recover a considerable amount because of RMS's misrepresentations that it had been keeping the Air Force fully informed of its costs.  Fluor then

brought this suit against Defendants to recover the damages it has suffered by RMS's fraudulent conduct.

## Discovery

In an effort to facilitate discovery and document production, Fluor agreed to produce all documents produced in the Air Force litigation in its initial disclosures in this case. The parties also agreed that any additional documents needed to supplement the prior productions would be sought through formal discovery requests. (*See* Email from Ricardo Cato to J. Alex Ward, Feb. 17, 2010, attached as Ex. 2)  In its document requests, RMS requested a privilege log for the documents produced in the Air Force litigation, but Fluor informed RMS that no privilege log was ever produced in that proceeding.  Fluor counsel agreed, in good faith, to prepare a privilege log, and include in the log a list of documents that were identified in Fluor's initial disclosures. In creating this log, Fluor incorporated documents from previous privilege logs for documents produced in the IBS litigation that had been reproduced in the Air Force litigation.[4]

Fluor produced its privilege log on May 7, 2010, and transmitted a revised privilege log on May 14, 2010.  On May 10, 2010, RMS initiated a meet and confer with Fluor to discuss RMS's concerns with Fluor's privilege log.  Thereafter, on May 19, 2010, RMS sent Fluor an email with a list of 491 separate documents (not including the duplicate documents) that it did not believe were privileged, without any explanation as why it was challenging these specific documents. (*See* Email, from Carrie Apfel to Graham Eddy, May 19, 2010, attached as Ex. 3)

Fluor responded by requesting RMS to specifically identify each document it was challenging and the reasons for the challenge.  Fluor also clarified that even if there was no

---

[4] Many of these documents are unrelated to the issues in this case and nonresponsive to any of RMS's document requests; however, Fluor, in an act of good faith and to avoid an unnecessary dispute about privileged documents, included all of these documents on its log, even documents that are not responsive to the current litigation.

attorney in the AUTHOR or RECIPIENT field, the name of the attorney rendering legal advice was clearly in the document description. By contrast, RMS's log never identified the attorney involved in the communication when an attorney was not in the AUTHOR or RECIPIENT fileds.[5] (*See* Email from Graham Eddy to Carrie Apfel, May 20, 2010, attached as Ex. 3)

On May 24, 2010, the parties conducted another meet and confer teleconference hoping to narrow the number of documents challenged by RMS. After reviewing the documents that RMS challenged, Fluor informed RMS that most of the documents it was challenging were either unrelated to the issues in this case or were not responsive to any of their document requests. However, in a showing of good faith, Fluor, without any legal obligation to do so, agreed to provide RMS with "greater justification" for the documents that RMS was challenging in the hope of resolving (or at least narrowing) the issue, and thereby obviating the need for Court intervention. On May 25, Fluor provided a Supplemental Privilege Log with additional detailed descriptions of its privilege documents, to no avail. (*See* Fluor Supplemental Privilege Log, attached as Ex. 4) RMS refused to reconsider any of its privilege challenges in light of the updated descriptions provided by Fluor and seeks to have the Court review all 491. On May 28, 2010, apparently dissatisfied with the detailed descriptions (considerably more detail than it provided in its own log), RMS filed the instant Motion to Compel.

## **Argument**

### I.   **RMS'S CHALLENGES TO FLUOR'S PRIVILEGE LOG SHOULD BE DENIED.**

The attorney-client privilege is intended to protect certain communications between the client and counsel. As the "oldest of the privileges for confidential communications known to

---

[5]   Additionally, RMS generically described these communications as "Email providing information in connection with request for legal advice" without identifying the requesting attorney or the attorney. For example, see RMS Doc. Nos. 413695, 413840, 431928, and 431929.

the common law," the purpose of the attorney client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promoted broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

The attorney client privilege also "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389. With this in mind, courts have held that although "the ultimate goal [is] assessing the true merits of a lawsuit," the policy reasons behind the existence of the privilege merit a warning that "the burden is particularly high on one seeking to pierce the attorney-client privilege." *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, No. 05:97-CV-369BR1, 1998 WL 1742589, at *3 (E.D.N.C. 1998) (quoting *Chase Manhattan Bank v. Drysdale Sec. Corp.*, 587 F. Supp. 57, 58 (S.D.N.Y. 1984)).

### A.     Fluor Has Met Its Burden of Proof.

RMS tries to avoid addressing the merits of Fluor's privilege claims by arguing that Fluor has made blanket claims of privilege for various "categories" of documents, without identifying how and to what extent Fluor's privilege log or its document descriptions are inadequate. Indeed, one can only assume that RMS is engaging in a fishing expedition for documents that it hopes will bolster its otherwise weak defense. RMS has not identified a single entry on Fluor's privilege log that fails to adequately describe the privileged document or the privileged communication—presumably because it cannot. RMS's own logs are woefully deficient and are replete with generic descriptions of its own privileged documents.

Under Florida law,[6] the burden of establishing the attorney-client privilege over a document rests on the party claiming the privilege. *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 689 (S.D. Fla. 2009).[7]   When the documents appear on their face to be privileged, "the party seeking disclosure bears the burden of proving that they are not." *Shell Oil Co. v. Par Four P'ship*, 638 So.2d 1050, 1050 (Fla. 5th DCA 1993).   When making a claim of attorney-client (or work product) protection, the party seeking protection must (1) "make the claim expressly and [2] shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fla. R. Civ. P. 1.280(b)(5); *see also* Fed. R. Civ. P. 26(b)(5)(A) (same).   Thus, a privilege log is adequate so long as the party asserting the privilege "provide[s] sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection." Fed. R. Civ. P. 26(b)(5)(A), Advisory Committee Notes.

Fluor's privilege log more than meets these requirements.   RMS does not dispute the adequacy of Fluor's privilege log nor does it articulate why any particular document it is challenging is not privileged; instead, it indiscriminately groups together documents without any regard for the description of the particular document or the communication that is privileged. After the meet and confer teleconference that took place on May 24, 2010, Fluor voluntarily

---

[6] Pursuant to the Subcontract, the parties elected Florida law to govern disputes. *See also* Fed. R. Evid. 501.

[7] The withholding party must show that 1) the communication would not have been made but for the contemplation of legal services; 2) the employee making the communication did so at the direction of his or her corporate superior; 3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services; 4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties; and 5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents. *S. Bell Tel. & Tel. Co. v. Deason*, 632 So.2d 1377, 1383 (Fla. 1994).

decided, without any legal obligation, to provide more detailed descriptions for the documents withheld on its privilege log to resolve this issue.  As an illustration, RMS challenges these documents from Fluor's supplemental log:

- Fluor Doc. No. 46: described as "attorney comments on draft letter to IBS" which was a letter with attorney comments between two of Fluor's in-house attorneys, Tim Young and James Dyer.

- Fluor Doc. No. 81: described as an "email in connection with request for legal advice regarding IBS performance and liquidated damages claims," which was an email sent to Fluor's in-house attorneys, Tim Young and James Dyer from Barry Wimberley.

- Fluor Doc. No. 117: described as an email containing a "strategy for responding to IBS demands," which was an email sent from James Dyer to Tim Young.

- Fluor Doc. No. 202: described as an "email from counsel regarding legal advice on status of IBS tools and equipment," which was an email sent by James Dyer.

Fluor has adequately described the nature and extent of the communications in these documents (in addition to numerous other examples), and clearly, these documents are privileged.

Yet, RMS continues to challenge these documents because only in-house attorneys were on the communication, despite the nature of the communication and the description in the log, in fear that Fluor is claiming privilege for business advice and not legal advice.  But Fluor has not claimed privilege for business advice.  Courts have held that "while it is true that the attorney-client privilege does not protect ordinary business advice, 'legal advice concerning a commercial transaction is often intimately intertwined with and difficult to distinguish from business advice." *Metric Constructors, Inc.*, 1998 WL 1742589, at *11 (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982)).  Fluor claims legal advice about business matters, but not for business advice.

Again, RMS cannot seriously maintain its challenge to these documents, (and hundreds of other documents like them) because it *makes the same privilege claim for documents on its*

*own log*, with considerably less detail than Fluor provided in its supplemental log. For example, RMS Doc. Nos. 416452, 416378, 416379, and 436938, and 436941 (in addition to many others) only reference in-house attorney Kent Brostrom, and in RMS Doc. Nos. 436954, 436957, 436958, 436961, 436963, and 436966, Mr. Brostrom was only copied in those email communications. RMS's description for all of these documents is "[e]mail providing information in connection with request for legal advice"—a stark contrast to the much more fulsome description contained in Fluor's log.

Given this level of detail contained in Fluor's log, Fluor has more than satisfied the requirements under Florida law for establishing the privilege of these documents, and RMS's challenge to these documents should be denied. *Tyne v. Time Warner Entm't Co.*, 212 F.R.D. 596, 598 (M.D. Fla. 2002); *TIG Insurance Corp. of Am. v. Johnson*, 799 So. 2d 339, 340-41 (Fla. 4th DCA 2001) (requiring that parties "describe the document[s] . . . [in] sufficient[] detail[] to allow the court to determine whether the discovery opponent has discharged its burden of establishing the requirements").

### B. Fluor's Emails that Discuss Legal Advice Are Privileged, Even If a Lawyer Is Not an Author or Recipient

RMS has also challenged Fluor's documents that involve non-lawyers, referred to as Fluor "legal personnel." As discussed above, Fluor has met its burden by showing that the documents withheld have been sufficiently described to maintain the attorney-client privilege. RMS's failure to accept Fluor's explanation of the inner-workings of its corporate structure and business model does not make RMS the *de facto* authority to determine whether Fluor's communications within its legal department are privileged.

RMS argues that Fluor has failed to justify its privilege claims with respect to communications involving non-lawyers. RMS's argument is disingenuous at best because it

claims privilege for 179 documents where no lawyer is cited in the communication, and it has not made any attempt to attribute the privileged communication to any attorney. Rather, Fluor has included the name of the attorney who provided legal advice, or who sought legal advice, whenever an attorney was not in the AUTHOR or RECIPIENT fields. (*See, e.g.,* Fluor Doc. Nos. 22, 39, 72, 84, 90, 104-10, 281, 289, and 315.) Unlike Fluor, RMS failed to identify the attorney(s) who requested legal advice, and instead generically described such documents as "Email providing information in connection with request for legal advice." Fluor, and this Court, are left to wonder whether RMS has improperly claimed privilege at least 179 of its documents that do not describe in any fashion that an attorney was involved in a communication.

Regardless, RMS cannot serious challenge the proposition that confidential communications that transmit or discuss legal advice are privileged, even if the Fluor personnel themselves are not attorneys. *Metric Constructors, Inc.*, 1998 WL 1742589, at *11 ("documents subject to the [attorney-client] privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately." (quotations omitted)); *see also Upjohn Co.*, 449 U.S. at 392 (holding that the privilege extends beyond the control group because full and frank legal advice must be conveyed 'to the employees who will put into effect the client corporation's policy'"). Similarly, Florida law recognizes that the privilege extends to third parties "to whom disclosure is necessary in furtherance of rendition of legal services." *Cunningham v. Appel*, 831 So.2d 214, 215 (Fla. 5th DCA 2002); *see also In re Tippy Togs of Miami, Inc.*, 237 B.R. 236, 239 (Bankr. S.D. Fla. 1999) (holding "mere presence" of third party at conference does not destroy privilege where third party is acting as an attorney or as an agent of party claiming privilege). Fluor's log has more than adequately described the privilege associated with each document

11

sufficiently to inform RMS and the Court that the document is privileged even where an attorney was not the author or recipient. RMS's challenges to these documents should be denied for these reasons, and because it claims privilege for the exact type of documents.[8]

### C.    Fluor Has Not Improperly Claimed Privilege for Donald McDonald Documents

RMS has challenged documents withheld as privileged from Donald McDonald, a member of Fluor's litigation group. Mr. McDonald is the Executive Director of the Corporate Claims Management Group for Fluor, which is the litigation division of Fluor's in-house legal department. (*See* McDonald Aff. ¶2, attached as Ex. 5)  His primary job responsibilities include assisting both in-house and outside counsel in litigating claims brought against or on behalf of Fluor. (*Id*. at ¶3)  During Task Order 5076, Mr. McDonald worked directly for James Dierking, in-house counsel for Fluor, and outside counsel from Vinson & Elkins LLP, with fact gathering and document collection for the IBS litigation, the Termination for Convenience Settlement Proposal with the Air Force, the Air Force litigation, and currently the litigation with RMS. (*Id*. at ¶5)  Mr. McDonald is not involved in any of the business or operational side of Task Order 5076 and was not involved in the business-related aspects of Task Order 5076. (*Id*. at ¶ 5, 6)

Florida recognizes that "the attorney-client privilege extends to agents and representatives of the attorney when the disclosure is in furtherance of the rendition of legal services or when disclosure is reasonably necessary for the transmission for the communication." *Tyne*, 212 F.R.D. at 598-99; *see also* Fla. Stat. § 90.502(1)(c)(1), (2); *Cunningham*, 831 So.2d at 215; *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 545, 548 (S.D. Fla. 1986) (communications

---

[8] RMS complains that Fluor identified several individuals on its log as being attorneys. After Fluor verified these individuals' job titles and positions as being non-lawyers, Fluor immediately notified RMS and removed them from the privilege log. RMS, on the other hand, has identified a paralegal, Michelle Trepanier, as an attorney on its log and has claimed privilege for many of the documents between her and other non-lawyers, and these are in addition to the 179 documents that have no attorney on the communication.

made to or from individuals acting as "agents for the attorney")  RMS summarily dismisses Mr. McDonald's job responsibilities and the fact that he works at the direction of Fluor's litigation counsel.  RMS cites *Tyne v. Time Warner Entm't Co.*, for the proposition that attorneys can disclose information to their agents, such as stenographers and clerks, without waiving the attorney-client privilege.  But the court in *Tyne* accepted that a non-lawyer who was director of another department outside of the legal department, but who worked very closely with key individuals, including the head of Warner Bros.' legal department in disseminating legal advice, was nonetheless considered an extension of the legal department and ruled that her communications may not be disclosed. *Tyne*, 212 F.R.D. at 600-601.

For Mr. McDonald, it is much clearer than the individual in *Tyne*.  He may be best described as an "agent" of attorney James Dierking and other attorneys in Fluor's litigation group.  He works in the litigation department, at the sole direction of attorneys and assists the litigation attorneys in defending claims on Fluor's behalf.  As a result, Mr. McDonald's communications were undertaken at the direction of counsel, and are privileged under Florida law.[9] *See* Fla. Stat. § 90.502(1)(c)(1), (2); *Tyne*, 212 F.R.D. at 598-99; *see also Cunningham*, 831 So.2d at 215.[10]

---

[9] RMS also argues that Mr. McDonald is not an agent of counsel because Fluor has produced some of his documents that were business-related.  To the contrary, the only documents of Mr. McDonald that Fluor is aware of in RMS's are not business-related but are documents pertaining to Mr. McDonald's involvement with the Termination Claim with the Air Force, all at the direction of Fluor litigation counsel.  RMS has these documents in its possession because of a Joint Defense Agreement between Fluor and RMS entered into to initially pursue the Air Force under which the parties agreed that they were not waiving privilege in any subsequent proceeding between them; these documents would otherwise be privileged.

[10] RMS cannot be heard to complain about Mr. McDonald's communications because they claim privilege for numerous documents of Michelle Trepanier and have identified her as an attorney on its privilege log.  Ms. Trepanier is not, in fact, an attorney but is a senior manager and paralegal in IAP's legal department. *See* RMS Doc. Nos. 413665, 442080, 436537, 436538, 415898, 415900, 415901, 436535, and 442080, among others.

**D.     An *In Camera* Review of Fluor's Documents in Unnecessary.**

In the alternative, RMS argues that this Court should engage in an *in camera* review of Fluor's documents to make the determination as to whether each of the challenged documents are indeed privileged.  This request is both improper and unnecessary.  First, before piling hundreds of documents on the Court to review, RMS should be required to take a critical view of its privilege challenges and significantly limit the scope of the challenged documents.  RMS declined that opportunity at Fluor's invitation and has indiscriminately challenged documents without considering the nature of the subject matter of the document and without any regard to the updated description that Fluor voluntarily provided on May 25th.

Second, as Fluor explained during the meet and confer, a large majority of the documents that RMS is challenging are either unrelated to this litigation, i.e. documents that pertain to the IBS litigation (responding to IBS written discovery requests), and/or are not responsive to any of RMS's document requests.  Fluor has impressed upon RMS that it is challenging documents that are not related to this lawsuit, and Fluor has sufficiently described those documents on its supplemental privilege log for RMS to make the same reasoned conclusion.  It is unclear why RMS is challenging documents, such as Fluor Doc. No. 133, which is an "email in connection to request for legal advice on draft letter to IBS on Bahrain," which was an email from James Dyer to Tim Young and Don Sticinski.[11]  Likewise, Fluor is puzzled as to why RMS challenges Fluor Doc. No. 287, which is an email from Dirk Leach to in-house attorney James Dierking regarding a "request for legal advice regarding Shaikh Isa billets," a completely different task order than the Task Order (TO 5076) that is in issue in this case.[12]

---

[11] This document is likewise not relevant and unresponsive to any of RMS's document requests.

[12] As stated earlier, in an attempt to facilitate discovery and as a courtesy to RMS, Fluor produced its privilege log that combined earlier versions of privilege logs previously produced in prior litigation involving Task Order 5076 (and largely irrelevant).  Moreover, RMS cannot be

Instead of wasting the Court's time by forcing it to mull over hundreds of documents, RMS should be required to specifically state a legitimate challenge to each of Fluor's documents and identify why it believes a particular document should not be withheld.  RMS has failed to narrow its challenges, even after Fluor provided more detailed information concerning the documents on its privilege log. The Court should not be called upon to do RMS's work and facilitate RMS's fishing expedition for documents that it believes are not privileged without any legitimate basis.[13]

## II.     RMS'S CHALLENGE ON SUBJECT MATTER WAIVER SHOULD BE DENIED.

### A.     Fluor Has Not Waived Privilege Over Documents Related to Invoicing the Air Force for IBS Rework Costs.

RMS claims that Fluor has effectively waived certain privileged documents through the disclosure in an e-mail of legal advice received from outside counsel. Fluor strongly disagrees. Although Fluor does not deny that information obtained from attorneys was disclosed, that disclosure does not constitute a subject matter waiver of any other related information or documents.  Under Fed. R. Evid. 502, the controlling authority on subject matter waiver, three

---

heard to complain about these documents since they were never requested in RMS's discovery requests.  RMS never requested any documents related to IBS's performance under Task Order 5076 or the litigation that ensued between Fluor and IBS.  Those documents on Fluor's privilege log are not responsive or relevant, and Fluor is not required to produce them.

[13] Almost as an afterthought, RMS challenges documents on Fluor's privilege log that it alleges were "widely disseminated" and finds it "simply implausible" that these documents have been withheld as privileged, even though attorneys are on the communication.  But that is an insufficient basis to waive the document's privilege status. *See C.P. Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1576 (S.D. Fla. 1993) ("the wide circulation of [a privileged document] provides insufficient grounds, by itself, for revoking the document's privilege").  RMS's challenge should also be denied because RMS claims privilege for a substantial number of documents that it has widely distributed among non-lawyers. Moreover, the number of persons on a communication does not automatically strip a document of its privileged status, even if there are non-attorneys on the communication, when the communication is in connection with rendering legal advice. *See C.P. Smith*, 838 F. Supp. at 1576; *see also Metric Constructors, Inc.*, 1998 WL 1742589, at *11.

criteria must be met in order to justify a subject matter waiver.[14]  Rule 502 requires that (1) the

waiver be intentional; (2) the disclosed and undisclosed communications or information concern

the same subject matter; and (3) in fairness, the documents must be considered together. Fed. R.

Evid. 502(a).  The disclosure in question does not meet the criteria of Rule 502 (nor does it

satisfy previous Florida standards), and therefore, this Court should find that there has been not a

subject matter waiver in this case.

Fluor does not deny that it intentionally disclosed information obtained from its

attorneys. However, RMS has failed to demonstrate that the voluntarily disclosed information

satisfies the second and third requirements of Rule 502.  RMS's request for additional documents

based on a subject matter waiver is for "all communications and documents concerning the

subject matter of the disclosed communication, including but not limited to the document Mr.

Leach cited in his email to Mr. Clark and all related communications to and from Fluor's

counsel." (Mem. in Support of Def. Emergency M. to Compel at 23-4). This request is so broad

as to become meaningless.  The only district in Florida to have discussed Fed. R. Evid. 502(a)

has demonstrated an unwillingness to grant an overly expansive subject matter waiver. *See*

*Chick-Fil-A v. ExxonMobil Corp.*, 2009 U.S. Dist. LEXIS 109588, at *18-20 (S.D. Fla. Nov. 10,

2009) (ruling that overly expansive subject matter waivers are not appropriate, and limiting

subject matter waiver to the precise issue in disclosed information).[15]  RMS cites to the *Coates v.*

---

[14] Notably missing from RMS's memorandum is a discussion of Fed. R. Evid. 502. RMS has
incorrectly asserted that Florida state law concerning subject matter waiver controls here, but the
Fed. R. Evid. 502 governs subject matter waiver. *See* Fed. R. Evid. 502(f) ("Notwithstanding
Rules 101 and 1101, this rule applies to State proceedings and to Federal court-annexed and
Federal court-mandated arbitration proceedings, in the circumstances set out in the rule. And not
withstanding Rule 501, this rule applies even if State law provides the rule of decision.")

[15] Florida jurisprudence, before the enactment of Fed. R. Evid. 502, is consistent with the
reasoning of *Chick-Fil-A v. ExxonMobil Corp* on the same issue. *See, e.g., Coates v. Akerman,
Senterfitt & Eidson, P.S.*, 940 So.2d 504, 512 (Fla. 2d DCA 2006) (holding that disclosure of one

*Akerman, Senterfitt & Eidson, P.S.* case in favor of subject matter waiver, but that court found no subject matter waiver at all.

Even if the court were to find that subject matter waiver applies here, RMS still will not be entitled to any additional materials. The scope of the subject matter waiver granted in *Chick-fil-A* was limited to the most literal meaning of the disclosure. *Chick-fil-A*, 2009 U.S. Dist. LEXIS 109588, at \*20. In this matter, the information disclosed consisted of an attorney opinion as to how Fluor should bill the costs they were incurring. The Eleventh Circuit has an established ruling that "the subject-matter doctrine does not extend to materials protected by the opinion work product privilege." *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994). The court in *Chick-fil-A* stated that "*Rule 502* does not abrogate the Eleventh Circuit's ruling that the subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege." *Chick-fil-A*, 2009 U.S. Dist. LEXIS 109588, at \*34 (quoting *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994)) (internal quotations omitted). Since the scope of Fluor's disclosure encompasses only attorney opinion, even if this court were to find that subject matter waiver applied, it would apply to an extremely narrow set of materials that is completely protected by the Eleventh Circuit's ruling.

---

conversation with one lawyer did not serve as a waiver of all privileged communications with other professionals, even if they related to the same topic); *Old Stone Bank v. Farris*, 647 So.2d 916, 917 (Fla. 4th DCA 1994) (holding that voluntary disclosure of attorney correspondence in the course of business does not waive privileges to any other materials between the client and attorney, and stating that "[t]he fact that privileged communications occur in the course of a transaction which is later litigated does not eliminate the attorney-client privilege.").

RMS has not demonstrated that Fluor's voluntary disclosure satisfies the requirements for subject matter waiver under FRE 502(a) or under Florida common law.[16]  Their request is overly broad and relies on case law that actually supports Fluor's position.  Based on RMS's failure to make a legitimate claim to any documents on Fluor's privilege log relating to the same subject matter as the disclosed information, their request for a subject matter waiver should be denied.

### B.     Fluor Has Not Waived Privilege Over Three Documents with Dwight Durham's Notes

Finally, without any legal authority to support its request, RMS argues that Fluor should be compelled to produce three documents that were inadvertently disclosed to RMS and then redacted before they were even produced.  The dispute centers around RMS's access to the more than 120 boxes of documents in Fluor's Greenville, South Carolina offices that Fluor allowed RMS attorneys to access and mark for subsequent production by Fluor.  Prior to allowing RMS attorneys to review these documents, each document was reviewed by a member of Fluor's legal team. After RMS designated the documents it wished to be copied and before Fluor delivered the documents to RMS, Fluor's counsel reviewed the documents again and noticed that there were three documents in that production that contained privileged information.

RMS contends that Fluor did not take reasonable steps to prevent the disclosure of these privileged documents. That assertion is erroneous.  Fluor subjected all documents viewed by RMS to a rigorous review process and immediately acted to redact certain privileged communications before the documents were ever in the possession of RMS, in full accordance

---

[16] Also, Florida courts do not favor waiver of the attorney-client privilege. *Liberty Mut. Ins. Co. v. Leave Am., Inc.*, 735 So.2d 560, 562 (Fla. 4ths DCA 1999) ("The judiciary of this state should protect communications which Floridians recognize as privileged, without being hobbled by less important considerations.")

with the requirements of Fed. R. Evid. 502(b).[17]   Fluor has met its burden in securing the privileged information, and the redacted portions of these documents should not be compelled.

Moreover, within these three documents, only four pages have been redacted. Proportionally speaking, the disclosure is quite small, a factor that speaks to the efforts made by Fluor to protect its privileged materials. *See Heriot v. Byrne*, 257 F.R.D. 645, 659 (N.D. Ill., Mar. 20, 2009) ("[It is an] undeniable truth that the greater the possibility of errors, the more likely errors will occur."); *Wunderlich-Malec Sys. v. Eisenmann Corp.,* 2007 U.S. Dist. LEXIS 78620, at *10 (N.D. Ill., Oct. 18, 2007) ("[T]he greater the ratio is between privileged documents and total documents produced, the more persuasive claims of inadvertent production become."). Because of Fluor's diligence in discovering the privileged documents, Fluor was able to detect the mistakenly produced materials and redacted them immediately, such that RMS never even had possession of any privileged documents.

RMS also argues that Fluor has waived its privilege to these documents because both IBS and the Air Force had been permitted to review the same documents.  But there is absolutely no evidence that IBS and the Air Force both viewed the same four previously unredacted redacted pages. Also, as noted above, once Fluor's counsel realized that certain documents should not have been included in the production, it took immediate steps to prevent the disclosure.  Under Fed. R. Evid. 502(b), the clock does not begin to run on the disclosing party's duty to rectify the error until *after* the inadvertent disclosure has been discovered. *See Heriot*, 257 F.R.D. at 659 (finding that inadvertent disclosure did not constitute waiver in this case and stating that "how

---

[17] Fed. R. Evid 502(b) states that "[D]isclosure does not operate as a waiver in a Federal or State proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."

the disclosing party *discovers and rectifies* the disclosure is more important than *when* after the inadvertent disclosure the discovery occurs"); *Laethem Equip. Co. v. Deere and Co.*, 261 F.R.D. 127, 134 (E.D. Mich. Aug. 27, 2009) (stating that when plaintiff's counsel sent a letter demanding return of the information the same day of discovery, that was a sufficiently reasonable effort to rectify the disclosure).

Fluor redacted the privileged materials immediately after discovering their inadvertent disclosure. Because Fluor acted quickly in preventing disclosure, the documents were never provided to RMS. Therefore, Fluor has satisfied the requirements of FRE 502(b) to safeguard against waiver through inadvertent disclosure, and the redacted portions of these documents should not be compelled.

## CONCLUSION

RMS's attempts to engage in endless discovery disputes in the final days of discovery do not advance the substantive issues in this case and should not be permitted to continue any longer. Fluor has properly claimed privilege for the documents it has withheld on its privilege log and, unlike RMS, has made a good faith effort to cooperate in discovery and produce information to RMS, even when not legally required to do so. Fluor has properly defended its claims of privilege, and before this Court engages in any *in camera* review of privileged documents, RMS should be required to state with specificity why it challenges specific documents on Fluor's privilege log instead of broadly categorizing documents without any effort to carefully consider their individual content. Otherwise, if the parties and the Court were to engage in a document-by-document review, as RMS says it wants, it would sidetrack this litigation, consume substantial resources, and divert the parties from the central legal and factual issues in this case.

For the reasons stated above, RMS motion to compel production of documents improperly withheld as privileged should be DENIED.

Dated: June 8, 2010

Respectfully submitted,


_____/s/ Graham E. Eddy_____
Michael R. Charness
Graham E. Eddy
Vinson & Elkins LLP
1455 Pennsylvania Avenue NW, Suite 600
Washington, DC  20004
Telephone: (202) 639-6500
Facsimile: (202) 639-6604
mcharness@velaw.com
geddy@velaw.com

Ricardo J. Cata
Florida Bar. No. 208809
Russell Pfeifer
Florid Bar No. 659861
Wilson Elser Moskowitz Edelman & Dicker LLP
100 Southeast Second Street - Suite 3800
Miami, FL 33131-2126
Telephone: 305-341-2283
Facsimile: 305-579-0261
ricardo.cata@wilsonelser.com
russell.pfeifer@wilsonelser.com

*Counsel for Plaintiff*
*Fluor Intercontinental, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2010, I caused the foregoing FLUOR INTERCONTINENTAL, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED to be served by courier to the following counsel of record:

> J. Alex Ward
> Carrie F. Apfel
> Jenner & Block LLP
> 1099 New York Avenue, NW, Suite 900
> Washington, DC 20001
> Telephone: (202) 639-6000
> Facsimile: (202) 639-6066
>
> ***Counsel for Defendants and Third-Party Plaintiffs IAP Worldwide Services, Inc. & Readiness Management Support, L.C.***

> ___/s/ Graham E. Eddy_____
> Graham E. Eddy
> *Counsel for Plaintiff*
> *Fluor Intercontinental, Inc.*

US 418185v.1