IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


FLUOR INTERCONTINENTAL, INC.,
et. al.,

    Plaintiff,

vs.                                              CASE NO. 5:09cv331/RS-EMT

IAP WORLDWIDE SERVICES, INC. and
READINESS MANAGEMENT SUPPORT,
LC,

    Defendants/Third Party Plaintiffs,

vs.

JOHNSON CONTROLS, INC.,

    Third Party Defendant.
_____/

## ORDER

Before me is Defendants' motion for summary judgment (Doc. 94).

### I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to

any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Defendant Readiness Management Support, LLC ("RMS") is a military contractor based in Panama City, Florida. It is a wholly-owned subsidiary of Defendant IAP Worldwide Services, Inc. ("IAP"). RMS was the prime contractor for Air Force Contract Augmentation Program ("AFCAP") Contract No. F08637-02-D6999. Because this was RMS' second AFCAP contract, it was known as "AFCAP 2."

AFCAP 2 was a type of cost-reimbursement contract known as a cost-plus-award fee contract. The AFCAP contract contained a "Limitation of Funds Clause" which required the contractor to give notice to the contracting officer when it was within 60 days of incurring 75 percent of the funded amount under a task order. To meet the requirements of the AFCAP Contract, RMS entered into a subcontract with Plaintiff Fluor Intercontinental, Inc. ("Fluor").

A task order ("TO") is a specific contractual task within a broader contract. One TO within AFCAP 2 was TO 5076, which involved the construction of a fully functional Air Force camp known as the Expeditionary Village ("EV") in Al Udeid, Qatar. Fluor and RMS entered into TO 5076 on December 9, 2002. After receiving a "Notice to Proceed" from RMS on December 23, 2002, Fluor contract with International Building Systems, Inc., ("IBS") to begin fabricating the components of the EV buildings. Because of problems with the quality of IBS's work, Fluor terminated IBS's purchase order for default on May 19, 2003. Fluor

then negotiated with a new contractor to complete the EV, creating additional costs to repair the faulty work done by IBS.

At this point, the parties' versions of the facts diverge. Under Plaintiff's version of the facts, which I must consider for the purposes of this motion, RMS and Fluor agreed that pursuant to the subcontract, Fluor would bill RMS and RMS would bill the Air Force for the cost to repair IBS's work that Fluor was not able to recover from IBS. To keep track of the cost of repairing IBS's work, Fluor agreed with RMS to create a charge capture account referred to as "0076." The 0076 costs, when added to the TO 5076 costs, exceeded the funding limit designated for TO 5076, but RMS agreed to allow Fluor to incur 0076 costs beyond the funding limit set for TO 5076. RMS represented to Fluor that it was keeping the Air Force informed of the amount of the 0076 costs and RMS's intention to look to the Air Force to pay Fluor's 0076 costs if IBS was unable to pay. However, RMS was not doing so, and instead did not notify the Air Force of the 0076 costs. RMS did not inform the Air Force of the amount of the 0076 costs until October 30, 2003. Shortly after, on November 5, 2003, the Air Force terminated for convenience TO 5076.

RMS and Fluor together filed a termination settlement proposal, a typical process followed when the government terminates a contract for convenience. The Air Force denied a Certified Termination for Convenience Claim because "RMS

4

failed to provide timely notice via the Limitation of Funds clause until 30 Oct 03, at which time the Government properly terminated the Contract."

RMS appealed the Contracting Officer's decision to the Armed Services Board of Contract Appeals ("ASBCA") on behalf of Fluor on May 16, 2007. On December 29, 2008, RMS, Fluor, and the Air Force entered into a settlement agreement relating solely to the termination claim in the amount of $14 million, releasing the Air Force from any liabilities or claims related to TO 5076. Fluor asserts that it was forced to accept less than the full amount of its allowable costs because of RMS's lack of adequate notice to the Air Force.

Fluor now brings four claims against RMS: breach of contract, promissory estoppel, fraudulent misrepresentation, and negligent misrepresentation. Defendants have moved for summary judgment on all four counts.

### III. ANALYSIS

*Count I: Breach of Contract*

Defendants move for summary judgment on Plaintiff's breach of contract claim, arguing that Plaintiff's contract claim is barred by both the express terms of the contract and the doctrine of judicial estoppel.

Contract Terms

The subcontract between RMS and Fluor provides in pertinent part: "Contractor's liability to Subcontractor for payment of Subcontractor's termination claim shall be limited to any payment Contractor receives from the Government on account of Subcontractor's termination claim." ¶ 15(f) (Doc. 1-5 at 8). Defendants argue that this provision precludes Plaintiff from recovering on its breach of contract claim. However, Plaintiff argues that this provision applies only to a termination claim, and that its claim for breach of contract is separate and distinct from the termination claim.

Taking the facts in the light most favorable to the Plaintiff, a reasonable jury could find that Plaintiff's breach of contract claims are not termination claims under ¶15(f) of the subcontract, and therefore Plaintiff's recovery is not limited to the amount it received from the government. Furthermore, Fluor has presented evidence that RMS breached the subcontract by failing to give adequate notice to the Air Force of Fluor's rework costs. Whether RMS failed to provide sufficient notice and therefore breached the subcontract is an issue of fact that can only be determined by the jury.

## Judicial Estoppel

Defendants also argue that Fluor's breach of contract claim is barred by judicial estoppel. "Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including

6

quasi-judicial, proceedings." *Blumberg v. USAA Cas. Ins. Co.,* 790 So. 2d 1061, 1066 (Fla. 2001). The doctrine prevents parties from making a mockery of justice by inconsistent pleadings. *Id.* (quoting *American Nat'l Bank v. FDIC,* 710 F.2d 1528, 1536 (11th Cir. 1983)). Defendants argue that Fluor took the position in the ASBCA appeal that RMS provided sufficient notice of Fluor's costs, and therefore Fluor should be judicially estopped from asserting a claim in this case that RMS breached the contract by failing to provide sufficient notice to the Air Force of Fluor's costs.

However, judicial estoppel applies only where the position assumed by a party was "successfully maintained." *Blumberg* at 1066. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. *New Hampshire v. Maine,* 532 U.S. 742, 750-51, 121 S.Ct. 1808 (2001). To "successfully maintain" a claim requires that the first court adopt the claim or position either as a preliminary matter or as part of a final disposition. *Grau v. Provident Life and Acc. Ins. Co.*, 899 So.2d 396, 401 (Fla. 4th DCA 2005). Here, the ASBCA opinion simply adopts the settlement agreement of the parties and sustains the appeal. (Doc. 101-1). There is no reference to RMS's notice to the Air Force or any factual issues. Therefore, the ASBCA did not "adopt" Fluor's position regarding RMS's notice, and judicial estoppel does not apply.

In addition, judicial estoppel requires that there be prejudice to the adverse party. As the Florida Supreme Court noted:

> [T]he party claiming the estoppel must have been misled and have changed his position; and an estoppel is not raised by conduct of one party to a suit, unless by reason thereof the other party has been so placed as to make it . . . unjust to him to allow that first party to subsequently change his position. There can be no estoppel where both parties are equally in possession of all the facts pertaining to the matter relied on as an estoppel[.]
>
> *Blumberg v. USAA Cas. Ins. Co.*, 790 So.2d 1061, 1066 (Fla. 2001)(citing 21 C.J. 1228).

Defendants have not alleged any prejudice by Plaintiff's allegedly inconsistent position. Furthermore, Defendants have been in possession of all the same facts as Fluor has. Thus, there is no prejudice to Defendants and judicial estoppel does not apply. Summary judgment is denied on Count I.

### *Count II: Promissory Estoppel*

Plaintiff admits that promissory estoppel is not available as a remedy when parties have a written contract addressing the relevant issues. *Univ. of Miami v. Intuitive Surgical, Inc.*, 166 Fed. Appx. 450, 454 (11th Cir. 2006)(citing *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So.2d 924, 928 (Fla. 4th DCA 2002)). Therefore, summary judgment is granted for Defendants on Count II.

### *Count III: Fraudulent Misrepresentation & Count IV: Negligent Misrepresentation*

Defendants have moved for summary judgments on Counts III and IV on the grounds that these tort claims are barred by Florida's economic loss rule. Under

the economic loss rule in Florida, misrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, where such misrepresentations are interwoven and indistinct from the heart of the contractual agreement." *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1316 (11th Cir. 2007)(citing *Hotels of Key Largo, inc. v. RHI Hotels, Inc.,*694 So.2d 74, 78 (Fla. 3d. DCA 1997)). Although parties in privity of contract are generally prohibited from recovering in tort for economic damages, action is permitted in limited circumstances when the torts are committed independently of the contract breach, such as fraud in the inducement. *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 537 (Fla. 2004). A tort action will lie for intentional or negligent acts considered to be independent from the acts that breached the contract. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238 (Fla. 1996).

It is clear that under Florida law, a tort claim of fraudulent inducement is an exception to the economic loss rule. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 537 (Fla. 2004); *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238 (Fla. 1996). However, here Plaintiff's claim is for fraudulent misrepresentation, not fraud in the inducement. All of Plaintiff's allegations involve actions by RMS that occurred *after* the contract was formed and during the performance of the contract. Thus, the alleged

9

misrepresentations are "interwoven and indistinct from the heart of the contract" and are barred by the economic loss rule. Summary judgment is therefore granted for Defendants on Count III.

Similarly, not all negligent misrepresentation claims are excepted from economic loss rule. *Vesta Const. and Design, L.L.C., v. Lotspeich & Associates, Inc.*, 974 So.2d 1176, 1881 (Fla. 5th DCA 2008). As with tort claims of fraud, "a distinction is drawn between misrepresentations that are directly related to the breaching party's performance of the contract and those independent of the contract (for example, a misrepresentation which induces the party to enter the contract)." *Id.* The economic loss rule exception only applies to the latter category of cases—those involving misrepresentations made independent of the contract. *Id.* at 1182. Because the negligent misrepresentations allegedly made by RMS occurred during the performance of the contract, not prior to its formation, Plaintiff's claim is barred by the economic loss rule. Therefore, summary judgment is granted for Defendants on Count IV.

## IV. CONCLUSION

**IT IS ORDERED:**

1) Summary judgment is denied on Count I.

2) Summary judgment is **granted** for Defendants against Plaintiff on Counts II, III, and IV.

**ORDERED** on September 13, 2010.

                                          <u>/S/ Richard Smoak</u>
                                          **RICHARD SMOAK**
                                          **UNITED STATES DISTRICT JUDGE**