IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**IAP WORLDWIDE SERVICES, INC.** and
**READINESS MANAGEMENT SUPPORT, LC,**

    **Third Party Plaintiffs,**        CASE NO. 5:09cv331/RS-EMT

vs.

**JOHNSON CONTROLS, INC.,**

    **Third Party Defendant.**
_____/

## ORDER

Before me are the parties' cross-motions for summary judgment. (Doc. 250, Doc. 254).

### I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the

court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

"'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).  However, there is no dispute between the parties over the material facts of this case.

On December 17, 2004, Third Party Plaintiff IAP Worldwide Services, Inc. (IAP) and Third Party Defendant, Johnson Controls, Inc.  (JCI) entered into a stock purchase agreement (SPA) for IAP to purchase the stock of JCI's subsidiary,

Johnson Controls World Services (JCWS). The agreement contained a merger clause and non-reliance provision,[1] as well as a provision that the agreement was to be interpreted under New York law. The agreement included the acquisition of JCWS' subsidiaries, including Readiness Management Services (RMS).

The closing date of the SPA was March 30, 2005, for a price of $260.1 million. Prior to the closing date, the parties agreed to some modifications of the terms of the SPA. On February 11, 2005, the parties executed Amendment No. 1 to the SPA ("Amendment 1"). Paragraph 3 of Amendment 1 amended Section 8.3(e)(x) of the SPA to "include indemnity for Damages arising out of or relating to items 1, 2, 3, and 6 set forth on Exhibit A to this Amendment, subject to the limitations in Section 8.3(e) . . . ." (Doc. 1-6). Item 1 is titled "RMS AFCAP" and reads as follows:

> AFCAP issued task order 5076 to Readiness Management Support, LLC ("RMS") to build an expeditionary village at Al Udeid AB, Qatar in late 2002. RMS directly contracted for power production and subcontracted to Fluor for self-performing the site preparation and erection of modular housing. Fluor's modular housing supplier, International Building Systems ("IBS"), delivered units that did not meet several material and assembly

---

[1] Section 8.7 of the SPA states in pertinent part "This Agreement, together with the confidentiality Agreement (which shall remain in full force and effect), the Disclosure Letter, and all exhibits hereto, (a) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof and (b) is not intended to confer upon any other persons any rights or remedies hereunder." Section 2.27 of the SPA states in pertinent part "Except for the representations and warranties contained in this agreement, neither Seller nor the Company nor any other person acting for either of them makes any other representation or warranty, express or implied, and Seller and the Company hereby disclaim any such representation or warranty, whether by Seller or the Company or any of their respective officers, directors, employees, agents or representatives or any other person, with respect to the execution, delivery or performance by Seller of this agreement or with respect to the transactions contemplated hereby, notwithstanding the delivery or disclosure to Buyer or any of its officers, directors, employees, agents or representatives or any other person or any documentation or other information by Seller or the Company or any of their respective officers, directors, employees, agents, or representatives or any other person with respect to any one or more of the foregoing."

specifications that were included in the final purchase order. There were disagreements between the customer in the field and the Air Force staff in the United States over the required speed of production and degree of permanence of the units. Fluor terminated IBS and initiated legal action to recover the cost of bringing the units up to specifications and completing the on –site construction. During this process, the Air Force contracting officer was routinely advised of status. In November, 2003, the contracting officer issued a termination for convenience letter for task order 5076. RMS and Fluor jointly prepared and submitted a settlement proposal to the Air Force, a response to which is expected by March, 2005. The maximum exposure in settling this issue for RMS is approximately $26 million. RMS has not paid Fluor for the cost overruns and has not recognized cost/revenue on these costs.

(Doc. 1-6)

The Air Force eventually denied RMS and Fluor's settlement proposal for a Certified Termination for Convenience Claim because "RMS failed to provide timely notice via the Limitation of Funds clause until 30 Oct 03, at which time the Government properly terminated the Contract." RMS appealed the Contracting Officer's decision to the Armed Services Board of Contract Appeals ("ASBCA") on behalf of Fluor on May 16, 2007. On December 29, 2008, RMS, Fluor, and the Air Force entered into a settlement agreement relating solely to the termination claim in the amount of $14 million, releasing the Air Force from any liabilities or claims related to task order 5076. Fluor asserts that it was forced to accept less than the full amount of its allowable costs because of RMS's lack of adequate notice to the Air Force.

Fluor brought suit against IAP and RMS for its remaining costs. IAP and RMS brought a third party claim against JCI for indemnity under the SPA, and that claim was bifurcated and stayed. (Doc. 40). The case between Fluor and IAP/RMS was resolved in part through summary judgment (Doc. 197) and in part by settlement (Doc. 196). IAP/RMS and JCI have filed cross-motions for summary judgment on IAP and RMS's breach of contract claim (Doc. 250, Doc. 254).

## III. ANALYSIS

Plaintiffs seek indemnification under the SPA for the $4.4 million paid to settle the dispute with Fluor and $2,893,664.77 in attorneys fees, pursuant to Sections 8.3(e), 8.3(h)(ii), and Amendment 1. Defendant claims that it is not obligated to indemnify Plaintiffs for these expenses because Plaintiffs failed to provide proper notice under the SPA and because a claim was never filed directly against IAP.

*Notice*

Amendment 1 to the SPA provides that Section 8.3(e) is amended to include indemnity for damages arising out of or relating to the RMS situation, as described *supra*, "subject to the limitations in Section 8.3(e)". (Doc. 1-6) Section 8.3(e) states in pertinent part:

> Seller's obligation to indemnify Buyer for any Damages pursuant to this Section 8.3(e) shall be effective and Seller shall be liable only to the extent

5

>   that . . . (iii) written notice of a Buyer Claim in respect of such Damages, specifying in detail the basis therefore and referring to this Section 8.3(e), has been received by the Seller on or prior to the date specified by Section 8.3(b) . . . .[2]

Thus, under the plain terms of the contract, JCI's obligation to indemnify IAP is subject to the time limits for notification set forth in Section 8.3(b) of the SPA.

Section 8.3(b) provides in pertinent part:

> [T]he representations and warranties made by Seller and contained in Article II of this Agreement shall survive the Closing (i) with respect to the representations and warranties contained in Sections 2.1., 2.2, 2.3, 2.4, and 2.13, indefinitely, (ii) with respect to the representations and warranties contained in Sections 2.15, 2.16, 2.17, and 2.19, until sixty (60) days following the expiration of the applicable statute of limitations (including all periods of extension, whether automatic or permissive) and (iii) with respect to all other presentations and warranties contained in this Agreement, until the second anniversary of the Closing, but shall not survive, and shall cease to be of any further force or effect, thereafter.

Plaintiffs' claim for indemnification is pursuant to Section 8.3(e) of the SPA (as amended by Amendment 1), and therefore falls under section iii of 8.3(b), the catch-all section that applies to "all other presentations and warranties contained in this Agreement." Section iii provides that the indemnification only survives until the second anniversary of the closing date. The second anniversary of the closing date was March 30, 2007.

Defendant argues that Plaintiffs are not entitled to indemnity because they failed to provide proper notice pursuant to Section 8.3(e). However, Amendment 1

---

[2] Section 8.3(e) also requires that the damages exceed $2 million. However, this provision is not in dispute; Defendant does not contend that the Plaintiffs' damages did not meet the threshold amount.

itself plainly satisfies the notice requirements of Section 8.3(e)(iii): it is written notice of a claim, refers to Section 8.3(e), specifies in detail the basis for the claim, and was received by JCI prior to March 30, 2007.  Furthermore, it is clear that the intent of the parties in executing Amendment 1 was that JCI would reimburse IAP for any losses it incurred as a result of the RMS litigation.   JCI thus had both actual notice and written notice through Amendment 1 of this indemnification obligation.  To find that the intention of the parties and the effect of Amendment 1 is otherwise would be an absurd result.

However, even if Amendment 1's detailed description of the RMS situation and reference to Section 8.3(e) did not satisfy the notice requirements of the SPA, the "June 9, 2005, email exchange" does.  This exchange included statements that the RMS situation "is potentially the subject of an indemnity claim under 8.3(e)(x)" and that "JCI has exposure if [the dispute with the Air Force] is not resolved in RMS' favor."  Thus, with these emails JCI had in its possession written notice of the RMS claim, referencing section 8.3(e), and prior to the deadline in 8.3(b).  Therefore, the notice requirements of Section 8.3(e) are satisfied.

### *Indemnity for IAP*

Defendant also argues that IAP's is not entitled to indemnity because Fluor only made a claim against RMS, not IAP.  Such an interpretation would make Amendment 1 illusory and meaningless, since it was impossible for Fluor to bring

a claim directly against IAP. It is a "cardinal rule of construction" that a court adopt an interpretation that renders no portion of the contract meaningless. *Diamond Castle Partners IV PRC, L.P. v. IAC/Interactivecorp*, 918 N.Y.S.2d 73, 75 (App. Div. 2011). It was clear under Amendment 1 that the potential claim would be brought against RMS, and JCI was to indemnify IAP for any losses resulting from that claim.

Furthermore, Amendment 1 states that JCI will indemnify IAP for any damages "arising out of or related to" the RMS situation. Damages are broadly defined in the SPA as "all demands, claims, actions or causes of action, assessments, losses, damages, and liabilities." It is obvious, and IAP has presented evidence demonstrating, that as the parent company of RMS, IAP suffered losses as a result of Fluor's multi-million dollar claims against its subsidiary. Defendant has not set forth any evidence to the contrary, other than the fact that Fluor's lawsuit was only against RMS, and the resulting documents for settlement in that litigation were only between RMS and Fluor. This scintilla of evidence is not sufficient to withstand summary judgment.

*Attorneys Fees*

Defendant appears to concede that if Plaintiffs are entitled to indemnity under the SPA, they are also entitled to indemnification for attorneys fees. In addition, under New York law, "there is a long, uninterrupted line of decisions

which have interpreted broadly worded indemnification clauses as embracing the right to reimbursement for counsel fees." *Breed, Abott, & Morgan v. Hulko*, 531 N.Y.S.2d. 240, 242 (App. Div. 1988). Therefore, I find that IAP is entitled to indemnity for its attorneys fees. However, the issue of the reasonableness of Plaintiffs' attorneys fees has been bifurcated (Doc. 245), and Plaintiffs have cited no relevant authority precluding Defendant from challenging the reasonableness of those fees.[3]

## IV. CONCLUSION

Since it appears there is no basis for recovery on the breach of contract claim for RMS, who was not a party to the SPA, summary judgment is granted for IAP.

**IT IS ORDERED:**

1. Summary judgment is granted for IAP against JCI in the amount of $4.4 million.

2. Summary judgment is also granted for IAP against JCI for liability for attorneys fees.

3. The issue of the reasonableness of attorneys fees remains. Not later than June 17, 2011, the parties shall file a proposed schedule for resolution of the attorneys fees issue. The schedule shall be such that

---

[3] The cases cited in Plaintiffs' brief deal with insurance law.

discovery is completed and the issue is submitted to the court for resolution not later than August 1, 2011.

4. The jury trial scheduled for June 20, 2011, is cancelled.

**ORDERED** on June 3, 2011.

<u>/S/ Richard Smoak</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**
